1

2

3

4

5

6            IN THE UNITED STATES DISTRICT COURT

7

8            FOR THE NORTHERN DISTRICT OF CALIFORNIA

9   TOD THELEN,

10        Plaintiff,                           No. C 04-02696 JSW

11   v.                                        **ORDER GRANTING**
                                               **DEFENDANT'S CROSS-MOTION**
12   JOANNE BARNHART,                          **FOR SUMMARY JUDGMENT**
                                               **AND DENYING PLAINTIFF'S**
13        Defendant.                           **MOTION FOR SUMMARY**
     _____/      **JUDGMENT**
14

15        Now before the Court is the motion of Plaintiff Tod Thelen ("Thelen") for summary

16   judgment and the cross-motion of the Commissioner of the Social Security Administration

17   ("Commissioner") for summary judgment.  Pursuant to Civil Local Rule 16-5, the motions have

18   been submitted on the papers without oral argument.  Having carefully reviewed the

19   administrative record and considered the parties' papers and the relevant legal authority, the

20   Court hereby DENIES Thelen's motion for summary judgment and GRANTS the

21   Commissioner's cross-motion for summary judgment.

22                    **FACTUAL AND PROCEDURAL BACKGROUND**

23        Thelen brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain

24   judicial review of a final decision of the Commissioner denying his request for Social Security

25   benefits and supplemental income.  Thelen is a 42-year-old male with a high school diploma.

26   (Certified Transcript of Record Proceedings "Tr." at 26, 146.)  His past vocational experience

27   includes hardwood floor installation, roofing, automotive quality control, and carpentry.  (Tr. at

28   166-73.)  He has not had substantial gainful employment since the date of his on-the-job injury,

**United States District Court**

For the Northern District of California

United States District Court

For the Northern District of California

1    July 6, 1999.  (Tr. at 15.)  Thelen claims he has a disability due to depression and back injuries,

2    including spondylolysis with spondylolisthesis, lumbar disc disease, pars defect, and bilateral

3    neuropathy.  (Tr. at 140.)  He alleges he is unable to stand or walk for long periods of time, has

4    difficulty completing simple tasks, and is unable to repeatedly lift, bend, or perform tasks with

5    his arms extended in front of his body.  (Tr. at 43-45, 54-56.)

6          Thelen was admitted to Marin General Hospital on July 6, 1999, after he injured his back

7    while ducking and stepping over a wheelbarrow at work.  (Tr. at 199.)  He was diagnosed with a

8    musculoskeletal strain of the lower back.  (*Id*.)  He received Toradal and Morphine for pain but

9    was still unable to move off of the gurney.  (*Id*.)

10         Between July 1999 and March 2001, Thelen was treated by Dr. Gemmer, who referred

11    him to several specialists to try to address his persistent back injuries.  (Tr. at 206-14, 274, 277-

12    79.)  Dr. Lieberson, a board certified neurological surgeon, reviewed a March 13, 2000 magnetic

13    resonance imaging ("MRI") scan report of Thelen's spine.  Dr. Lieberson noted the report

14    identified multilevel degenerative disease and a possible spondylolysis at L5, that the L5-S1

15    disk was abnormal, and that there appeared to be foraminal stenosis at both L4-5 and L5-S1.

16    (Tr. at 250.)

17         Thelen showed no significant improvement, even after receiving three separate lumbar

18    epidural steroid injections on April 17, 2000, May 2, 2000, and June 6, 2000.  (Tr. at 206-14,

19    274.)  Subsequent x-rays in early 2001 revealed a question of unilateral spondylolysis on the

20    right at L5-S1, a right L5 pars interarticularis defect, a partial left L5 defect, and a partial defect

21    of the right first sacral lamina.  (Tr. at 218-20, 223.)  On March 15, 2001, Dr. Lieberson

22    performed a lumbar discogram and diagnosed Thelen with lumbar disc disease with low back

23    pain, noting that the pain seemed most intense at the L5-S1 level.  (Tr. at 241-42.)

24         In a March 8, 2002 report, Dr. Lieberson later reclassified Thelen as "permanent and

25    stationary."  (Tr. at 263-65.)  Thelen's complaints remained unchanged, but were consistent

26    with a constant slight to moderate pain becoming occasionally moderate to severe.  (Tr. at 264.)

27    Dr. Lieberson recommended vocational rehabilitation because Thelen was not able to return to

28

his usual work.  (Tr. at 263-65.)  The objective medical tests still showed 50% loss of motion of the back and radiographic evidence of spondylolysis.  (Tr. at 264.)

On April 1, 2002, Dr. Lieberson diagnosed Thelen with lumbar disc disease and spondylolysis based on another MRI and radiographic evidence.  (Tr. at 259.)  Dr. Lieberson reported that Thelen could not lift over ten pounds and could not bend repeatedly.  (Tr. at 261.)  On September 25, 2002, Dr. Lieberson noted that nothing had changed since his April progress report and that there was no evidence of a focal neurological deficit.  (Tr. at 253-54.)

Dr. Wheeler, a board eligible neurologist, examined Thelen on January 18, 2003, and diagnosed him with chronic low back pain.  (Tr. at 290-94.)  He noted that Thelen had a normal gait, strength, sensation and range of motion.  (Tr. at 293.)  Dr. Wheeler also noted that Thelen was going to a vocational school, and that he hoped to pass the test to obtain a license to become a building inspector.  (Tr. at 291.)  Thelen reported daily activities of limited household chores, such as washing dishes or cleaning, and spending time with his children.  (*Id*.)  Dr. Wheeler assessed that Thelen could lift or carry forty pounds occasionally and twenty pounds frequently, limited by exacerbation of his back pain.  (Tr. at 293.)  Dr. Wheeler indicated that Thelen could occasionally perform postural maneuvers, such as bending, stooping or crouching, with the same limitation.  (*Id*.)  Additionally, Thelen could be expected to stand and walk at least six hours and sit without restriction during an eight-hour workday.  (*Id*.)  Thelen was taking Remeron, Lodine, and Norco, and he had suffered from asthma and depression in the past.  (*Id*.)

Earlier, on June 27, 2001, Dr. Levinson, Ph.D. evaluated Thelen's psychological status to help determine his candidacy for a multi-disciplinary pain treatment program at Kentfield Rehabilitation hospital.  (Tr. at 363-66.)  Thelen completed a battery of psychological tests, indicating a severe level of depression.  (Tr. at 365-66.)  Thelen began pain management psychotherapy with Dr. Levinson in preparation for the program through September, when Golden Eagle Insurance Company declined to approve the treatment.  (Tr. at 288-89, 366.)  During this psychotherapy, Thelen exhibited some difficulty with memory and concentration, as well as some resistance to interacting with others.  (Tr. at 287.)

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    On February 20, 2003, the Social Security Administration referred Thelen to Dr. Auluck

2    for a one-time psychiatric evaluation.  (Tr. at 307-11.)  Dr. Auluck diagnosed Thelen with Major

3    Depression, recurrent 296.33 (severe without psychotic features) with his global assessment

4    functioning at 60.  (Tr. at 309-10.)  Thelen continued to report a dysphoric mood, insomnia, lack

5    of drive, low energy level and impaired concentration.  (Tr. at 309.)  Dr. Auluck characterized

6    Thelen's concentration as "patchy" with difficulty maintaining persistence and pace.  (*Id*.)  Dr.

7    Auluck also stated that Thelen's daily activities and social functioning were "clearly limited,"

8    but found that he was able to interact fairly well with co-workers, supervisors, and members of

9    the public.  (*Id*.)  He noted that Thelen's ability to maintain an eight hour workday or a forty

10   hour work week on a consistent basis was compromised.  (Tr. at 309-10.)

11   On June 4, 2003 and June 11, 2003, state agency medical consultants assessed that

12   Thelen had the residual functioning capacity to do light work with occasional stooping or

13   crouching.  (Tr. at 322-23.)  Additionally they felt that his psychiatric impairment was non-

14   severe and that his main impairment was due to his physical, rather than mental, problems.  (Tr.

15   at 323.)  They concluded that Thelen's depression, while classified as "major," was not severe

16   enough to satisfy the criteria under the listed impairment § 12.04, Affect Disorders.  (Tr. at 329-

17   33.)  When asked what his daily activities were on June 10, 2003, Thelen stated the following:

18   walking one mile a day, doing the dishes, helping his five children with their homework and

19   occasionally taking them to the park or playing catch with them.  (Tr. at 323.)  It was also

20   reported that "DEA could hear his wife coaching him in the background."  (*Id*.)

21   Thelen filed an application for Social Security Disability Insurance Benefits and Social

22   Supplemental Income on September 4, 2002, alleging he had disabilities beginning July 6, 1999.

23   (Tr. at 107-09, 334-36.)  His initial and reconsideration applications were denied on the basis

24   that his condition was not severe enough to prevent him from working.  (Tr. at 74-78, 81-85.)

25   Thelen timely filed a Request for Hearing on August 11, 2003.  (Tr. at 86-87.)  An administrative

26   law judge ("ALJ") conducted a hearing on November 6, 2003.  (Tr. at 20.)  Thelen and a

27   vocational expert, Malcolm Brezinsky, both testified at the hearing.  (*Id*.)

28

4

United States District Court

For the Northern District of California

1    The ALJ found that Thelen's alleged inability to work was not fully credible given his

2  own testimony about his daily activities and corroborating accounts found in his medical records

3  (Tr. at 18-19.)  These daily activities included doing dishes, dressing and bathing himself, taking

4  walks, playing video games, and helping coach a little league baseball team for his children.

5  (Tr. at 17-18.)  Additionally, Thelen testified that he could occasionally lift twenty pounds from

6  the table.  (Tr. at 55.)  The ALJ also relied on the testimony of the vocational expert, who stated

7  that an individual of Thelen's age, education, past relevant work, and functional limitations

8  could perform jobs as a cashier, an optical final assembler, or a semiconductor bonder.  (Tr. at

9  18.)  The vocational expert testified that someone with a mild impairment in attention and

10  concentration could perform these jobs, but that someone with a moderate impairment could not

11  perform any jobs offered in the national economy.  (Tr. at 65.)  The ALJ found that while

12  Thelen's lumbar disc disease with low back pain was a severe impairment, he could perform

13  modest sedentary work, including lifting twenty pound objects from tabletop height, with a

14  stand or sit option every thirty minutes. (Tr. at 18-19.)  Therefore, the ALJ concluded that

15  Thelen was not disabled within the meaning of the Social Security Act and denied benefits and

16  supplemental security income.  (Tr. at 19.)

17    Thelen then filed a request for review of the ALJ's unfavorable decision, which the

18  Appeals Council denied.  (Tr. at 6-8.)  Having exhausted his administrative remedies, Thelen

19  commenced this action for judicial review of the ALJ's decision.

20  **ANALYSIS**

21  **A.      Standard of Review of the ALJ's Decision to Deny Social Security Benefits**

22    A federal district court may not disturb the ALJ's decision unless it is based on legal

23  error or the findings of fact are not supported by substantial evidence.  42 U.S.C. § 405(g);

24  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  "Substantial evidence means more than a

25  mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind

26  might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039

27  (9th Cir. 1995).  To determine whether substantial evidence exists, courts must look at the

28  record as a whole, considering both evidence that supports and undermines the ALJ's findings.

1    *Reddick*, 157 F.3d at 720.  The ALJ's decision must be upheld if the evidence is susceptible to

2    more than one reasonable interpretation.  *Id.* at 720-21.

3    **B.      Legal Standard for Establishing a Prima Facie Case for Disability**

4              The ALJ follows a five-step sequential evaluation process to determine whether the

5    claimant is disabled.  *Id.*; 20 C.F.R. § 416.920.  First, the claimant must not be presently

6    engaged in substantial gainful employment.  20 C.F.R. § 416.920(b).  Second, the claimant's

7    impairment must be "severe."  20 C.F.R. § 416.920(c).  Third, when the claimant has an

8    impairment that meets the duration required and is listed in Appendix 1 (a list of impairments

9    which are presumed severe enough to preclude work located in subpart P of part 404 of 20

10   C.F.R. § 416.920), or is equal to a listed impairment, benefits are awarded without considering

11   the claimant's age, education, and work experience.  20 C.F.R. § 416.920(d).  Fourth, if the

12   claimant's impairment does not meet or equal a listed impairment, the ALJ must assess all

13   relevant medical and other evidence in the claimant's case record and make findings to

14   determine the residual functional capacity of the claimant to do his or her past work.  20 C.F.R.

15   § 416.920(e).  If the claimant is able to do his or her past work, payments are denied.  *Id.*

16   Finally, if the claimant cannot perform his or her past work, the ALJ must then determine

17   whether they are able to do any other type of work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the

18   ALJ finds that the claimant is not disabled at any step along the way, the claimant is not

19   disabled and there is no need to continue subsequent steps of the analysis.  20 C.F.R. §

20   404.1520.

21             The claimant carries the initial burden of proving disability in steps one through four of

22   the analysis.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  However, if the claimant

23   establishes that he or she is unable to continue with past work, the burden shifts to the ALJ in

24   step five to show that the claimant can perform other gainful work.  *Id.*  Here, after going

25   through the complete evaluation process, the ALJ denied Thelen's application for benefits at

26   step five, concluding that Thelen was limited to less than a full range of sedentary work, and

27   that a significant number of such jobs existed in the national economy.  (Tr. at 18.)

28

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.     Substantial Evidence Supports the ALJ's Determination That Thelen is Not Disabled**

Thelen asserts that the ALJ erred in concluding that Thelen's physical and mental impairments did not meet or equal a listed impairment.  Thelen alleges that his impairment in attention and concentration is "moderate" instead of "mild," and consequently that the vocational expert's testimony requires a finding that there were no jobs he could perform.  Additionally, Thelen argues that the ALJ improperly discounted his claims of excessive pain.  In response, the Commissioner asserts that the ALJ's finding that Thelen's impairments were not disabling is free of legal error and supported by substantial evidence.  Specifically the Commissioner argues that Thelen failed to prove mental disability, that the vocational expert's testimony supports the ALJ's decision, and that the ALJ properly rejected Thelen's subjective complaints.

**1.     The ALJ did not err in concluding that Thelen's impairments did not meet or equal a listed impairment.**

Thelen contends that he meets the requirements for degenerative disc disease, which is listed under Disorders of the Spine in § 1.04 of Appendix 1.  20 C.F.R. Pt. 404, subpart P, App. 1, § 1.04.  He also argues that he meets the criterion for Affective Disorders in § 12.04 of Appendix 1.  20 C.F.R. Pt. 404, subpart P, App. 1, § 12.04.  The list of impairments in Appendix 1 are presumed severe enough to preclude gainful work.  20 C.F.R. § 404.1520(d).  However, the mere diagnosis of a listed impairment is not sufficient to sustain a finding of *per se* disability; it must also meet the findings shown in the listing.  *Id*. at § 404.1525(d); *see also Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).  "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment."  *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  It is the ALJ's purview and responsibility to weigh conflicting evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Where there is conflicting evidence, the ALJ may conclude that the listing requirements were not met if those conclusions are based on substantial evidence.  *See Lewis*, 236 F.3d at 513-14.

United States District Court

For the Northern District of California

In *Key*, there was conflicting evidence concerning four different listed impairments in Appendix 1. Only one of the four doctors on record, Dr. Hunter, made contradictory findings, but he did perform a full neurological examination. *Id*. Dr. Hunter's findings precluded the claimant from meeting at least one of the requirements of each listing. *Id*. For example, Menier's disease requires findings of disturbances of balance, but Dr. Hunter found no evidence of ataxia, a constitutional unsteadiness in the use of the arms and legs. *Id*. While three other doctors diagnosed the claimant with Menier's disease, the ALJ weighed the conflicting evidence in favor of Dr. Hunter's opinion to find that the claimant did not meet or equal the listed impairment, and this decision was upheld as based on substantial evidence. *Id*.

Here, there is conflicting evidence about the severity of Thelen's physical impairments. (Tr. at 225-62, 290-93.) Dr. Wheeler conducted a comprehensive orthopedic consultative examination, and concluded that Thelen could be expected to stand or walk at least six hours, and lift and carry twenty pounds limited by exacerbation of his back pain. (Tr. at 293.) A § 1.04 Spinal Disorder is a Musculoskeletal Disorder requiring a loss of function for at least twelve months . 20 C.F.R. Pt. 404, subpart P, App. 1, § 1.00. Loss of function is defined as the "inability to ambulate effectively" or the "inability to perform fine and gross movements effectively"on a sustained basis. *Id*. To ambulate effectively, a claimant must be able to maintain a "reasonable walking pace over a sufficient distance to sustain daily life activities," and to travel without assistance to a place of work or school. *Id*. To effectively perform fine and gross movements, a claimant must be able to "use both upper arm extremities" to sustain daily life activities like feeding and bathing oneself. *Id*. Thelen testified to, and/or reported to consultative examiners, the ability to dress and bathe himself, to take walks, to ride the bus, to go to school, to coach baseball and to play video games, etc. (Tr. at 18, 136-38, 149-59, 307-11.) Therefore, the ALJ's decision, supported by Dr. Wheeler's findings and Thelen's testimony about his daily activities, is based on substantial evidence.

Similarly, the ALJ determined that Thelen's affective disorder with depression imposed no restriction on daily activities, no difficulties in social functioning, no difficulties in concentration, persistence or pace, and no episodes of decompensation. (Tr. at 17.) At least two

United States District Court
For the Northern District of California

1    of these limitations, at a marked level, are required findings for Affective Disorders.  20 C.F.R.

2    Pt. 404, subpart P, App. 1, § 12.04.  Despite Dr. Auluck's diagnosis of "Major Depression,

3    recurrent," the state agency medical consultants specifically evaluated Thelen's alleged mental

4    disability under the criteria for § 12.04.  (Tr. at 309-10, 329-333.)  However, the state agency

5    consultants diagnosed Thelen with "Major Depression, stable" and rated his resulting degree of

6    functional limitation as "mild."  (Tr. at 330-31.)  This assessment, in combination with Thelen's

7    testimony about his daily activities, constitutes substantial evidence to support the ALJ's

8    determination that Thelen's mental impairments, considered singly or in combination, did not

9    equal or meet any impairments listed in Appendix 1.

10           **2.      Substantial evidence supports the ALJ's conclusion that Thelen could
                       perform modest sedentary work.**

12           Thelen insists that the medical evidence of his depression shows at least moderate

13    impairment in attention and concentration, and that the ALJ lacked substantial evidence to

14    conclude that Thelen had only a mild impairment. The vocational expert testified that someone

15    with the same functional limitations as Thelen, plus a mild impairment in attention and

16    concentration, could work, for example, as a cashier, but that someone with a moderate

17    impairment could not perform any jobs offered in the national economy.  (Tr. at 65.)

18           While a treating physician's opinion normally is afforded great weight in disability

19    cases, that opinion is not necessarily conclusive as to the ultimate issue of disability.

20    *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "To reject the opinion of a treating

21    physician [that] conflicts with that of an examining physician, the ALJ must make findings

22    setting forth specific, legitimate reasons for doing so that are based on substantial evidence in

23    the record." *Id*. (internal quotations omitted).  To satisfy this burden, the ALJ must set out a

24    "detailed and thorough summary of the facts and conflicting clinical evidence, [state] his or her

25    interpretation thereof, and [make] findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.

26    1986).

27           There is conflicting evidence of the severity of Thelen's mental impairment.  In 2001,

28    Dr. Levinson indicated that Thelen exhibited "some difficulty" with memory and concentration.

United States District Court

For the Northern District of California

(Tr. at 287.)  In 2003, Dr. Auluck, in a one-time consultative assessment, found that Thelen would have difficulties in maintaining persistence.  (Tr. at 309.)  However, the ALJ specifically stated that Dr. Auluck's assessment "did not give adequate consideration to the claimant's activities which indicate his concentration, persistence, or pace is not impaired."  (Tr. at 17.)  Dr. Auluck listed Thelen's activities as dressing and bathing himself, with occasional assistance.  (Tr. at 309.)  The ALJ gave more weight to the opinions of the state agency medical consultants in light of Thelen's otherwise consistently reported daily activities.  (Tr. at 17.)  After reviewing Thelen's files and some follow-up investigation, the state consultants reported that Thelen's psychiatric condition was "currently non-severe."  (Tr. at 323.)  When asked, Thelen reported that his daily activities included walking one mile, doing the dishes and helping the kids with their homework.  (Tr. at 323.)  These daily activities were also reported to Dr. Wheeler.  (Tr. at 291.)  To further support his finding that Thelen's concentration was not severely impaired, the ALJ also pointed to Thelen's consistent testimony about his activities, such as playing video games, and coaching children's baseball.  (Tr. at 17.)  Therefore, substantial evidence supports the ALJ's determination that Thelen had a mild, instead of moderate, impairment in attention and concentration.

> 3.    **The ALJ properly considered the objective medical evidence and Thelen's subjective complaints of excessive pain.**

Thelen claims that the ALJ improperly disregarded his testimony regarding his severe pain.  This Court must give great weight to the ALJ's credibility determinations. *Fair v. Bowen*, 885 F.2d 597, 602, 604 (9th Cir. 1989).  However, the Ninth Circuit recognized that the degree of pain is a purely subjective phenomenon. *Id*. at 601.  Therefore, once a claimant submits objective medical evidence establishing an impairment that "could reasonably be expected to cause some pain, it is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings." *Id*.  If the ALJ does discredit the severity of the pain, he or she is required to set forth "specific findings justifying that decision." *Id*. at 602.  Where those specific findings are supported by substantial evidence, the decision should not be second-guessed. *Id*. at 604.

10

United States District Court

For the Northern District of California

1   In *Fair*, the ALJ set forth the requisite specific findings to justify his rejection of the

2   claimant's excessive pain testimony.  *Id*. at 604.  The ALJ found that the claimant received

3   minimal conservative treatment for his complaints, he failed to follow his doctor's advice

4   regarding exercise and weight reduction, and he remained capable of caring for himself and his

5   home.  *Id*.  For example, the claimant was able to care for his personal needs, perform his own

6   household and shopping chores, ride public transportation and drive his own car.  *Id*.  Despite

7   claimant's testimony that his pain was prohibitive, this type of evidence justified the ALJ's

8   determination that the claimant was not precluded from working.  *Id*.

9   Like the claimant's daily activities relied upon in *Fair*, the ALJ's decision to reject

10   Thelen's subjective pain complaints was based on his own contradictory testimony about his

11   ability to walk to the store, occasionally lift up to twenty pounds of groceries from the table,

12   play video games, and coach children's baseball.  (Tr. at 17.)  The ALJ also noted that Thelen

13   had reported similar activities to several consultative examiners, including doing dishes,

14   cleaning, and dressing and bathing himself.  (Tr. at 18.)  These specific findings are supported

15   by substantial evidence that justify the ALJ's credibility determination.

16   The Court thus finds that the ALJ's finding that Thelen's impairments did not equal or

17   meet a listed impairment is supported by Dr. Wheeler's report, the state agency medical

18   consultants' report, and Thelen's testimony.  The ALJ's balancing of conflicting evidence

19   concerning the severity of Thelen's mental impairments in attention and concentration is

20   similarly based on objective medical records and hearing testimony.  Additionally the ALJ

21   provided sufficient findings supported by the record as a whole to justify his decision to

22   discredit Thelen's subjective pain testimony.  The ALJ's decision is therefore supported by

23   substantial evidence and is free of legal error.  Although Thelen's motion points to other

24   possible interpretations, it is not the job of this court to reevaluate the evidence.

25

26

27

28

11

**United States District Court**

**For the Northern District of California**

1

2                                    **CONCLUSION**

3          For the foregoing reasons, this Court hereby DENIES Thelen's motion for summary

4    judgment and GRANTS the Commissioner's cross-motion for summary judgment.

5

6

7          **IT IS SO ORDERED.**

8

9    Dated: August 15, 2005

10                                                          JEFFREY S. WHITE
                                                           UNITED STATES DISTRICT JUDGE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28